IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Mohammed Najem Omran, | : | |
| | : | Case No. 1:07-cv-187 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER |
| Department of Homeland Security, *et al.*, | : | |
| | : | |
| Defendants. | : | |

This matter comes before Court on Plaintiff's Motion for Summary Judgment (doc. 10) and Defendants' Cross-Motion for Summary Judgment (doc. 16). For the reasons that follow, Plaintiff's motion is **GRANTED** and Defendants' motion is **DENIED**.

I.  BACKGROUND

Plaintiff Mohammed Najem Omran is a lawful permanent resident of the United States and he resides within the jurisdiction of this Court. Omran is a native and citizen of Jordan. Defendants include the Department of Homeland Security ("DHS"), its designated agents, and the United States Attorney General. Defendants are involved in the process of reviewing naturalization applications.

On February 2, 2006, Omran filed a N-400 application for naturalization with the Nebraska Service Center of the U.S. Citizenship and Immigration Service ("USCIS"), a division of DHS. On June 8, 2006, the Cincinnati, Ohio Field Office of the USCIS examined Omran in connection to his naturalization application. No decision has been made with respect to Omran's naturalization application.

Omran initiated this suit by filing a Petition for Hearing on Naturalization Application on

March 8, 2007. (Doc. 1.) He asserts that he is entitled to a hearing on his naturalization application pursuant to 8 U.S.C. § 1447(b) because Defendants failed to make a determination on his application within 120 days of his examination with the USCIS. Omran seeks a declaration that he is entitled to be naturalized.

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could

reasonably find for the plaintiff." Id. at 252.

### III. ANALYSIS

#### A. Naturalization Process

The naturalization process begins when an applicant files his Form N-400 application. 8 U.S.C. § 1445; 8 C.F.R. § 334.2. Omran filed his N-400 on February 2, 2006. The USCIS is required to conduct investigations of applicants, including conducting "examinations" during which the examiner can take the testimony of the applicant or other witnesses. 8 U.S.C. § 1446(a), (b); 8 C.F.R. § 335.2. The USCIS conducts multiple background security checks in regard to applications submitted. First, they conduct checks against DHS's own immigration systems. Second, they conduct fingerprint checks. Fingerprint checks must be less than fifteen months old at the time USCIS adjudicates benefit applications. Third, the USCIS conducts a check against the DHS-managed Interagency Border Inspection System ("IBIS"), which contains records on "watch-list" information from more than twenty federal law enforcement and intelligence agencies. Fourth, the USCIS submits an applicant's name to the Federal Bureau of Investigation ("FBI") for an FBI name check.

Ultimately, the USCIS examiner is authorized to "make a determination as to whether the application should be granted or denied, with reasons therefor." 8 U.S.C. § 1446(d). Key eligibility requirements for granting the naturalization application include residency and good moral character. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.5; 8 C.F.R. § 316.10. The USCIS examiner "shall grant the application if the applicant has complied with all requirements for naturalization under this chapter." 8 U.S.C. § 335.3(a). "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial

examination of the applicant for naturalization under [8 C.F.R] § 335.2." Id.

Omran's application is being delayed by the FBI name check. The USCIS has conducted a fingerprint check of Omran. The USCIS also has received results regarding Omran from the IBIS check. The USCIS submitted Omran's name to FBI for a name check on or about February 20, 2006, but it has not received results from the FBI. The USCIS has stated that it cannot determine Omran's application without those results. Regulations provide that the USCIS is to conduct its "examination" of an applicant "only after the Service has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2. Nonetheless, the USCIS examined Omran on June 8, 2006 without the benefit of having the FBI name check results. Omran asserts without contradiction that he provided all requested information to the USCIS Officer who conducted his examination. The USCIS has not requested additional information from Omran regarding his eligibility for naturalization since the June 8, 2006 examination.

The head of the FBI National Name Check Program Section has averred that the FBI cannot provide a specific or general time frame for completing Omran's background check. He explained that the number of name check requests submitted to the FBI has increased since the September 11, 2001 terrorism attacks. Before the attacks, the FBI processed approximately 2.5 million name checks annually. The FBI processed more than 3.4 million name checks in fiscal year 2006. The FBI also has broadened its name check investigative procedures since the 9/11 attacks.[1] After it receives the FBI name check results, the USCIS intends to update Omran's

---

[1] The Declaration of Michael A. Cannon, the Section Chief of the National Name Check Program Section at the FBI, was filed as Exhibit 2 to Defendants' Cross-Motion for Summary Judgment. (Doc. 15-3.)

IBIS and fingerprint check results, and it might conduct further inquiries to resolve any outstanding issues.

**B.     Omran's Petition and the Court's Jurisdiction**

Because the USCIS failed to issue a determination on Omran's application within 120 days of his June 8, 2006 examination, he petitioned this United States District Court for a hearing on the matter pursuant to 8 U.S.C. § 1447(b). The statute provides:

> (b) Request for hearing before district court
>
> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Id. Defendants concede for purposes of this litigation that the Court has jurisdiction pursuant to 8 U.S.C. § 1447(b). See Musaad v. Mueller, No. 1:07-cv-149, Dkt. No. 12, slip op. at 8-9 (S.D. Ohio Oct. 16, 2007) (Spiegel, J.) (finding jurisdiction under § 1447(b) 120 days after a USCIS interview).[2]

Omran requests the Court to enter a judgment declaring that he is entitled to be naturalized and to set a date for naturalization. Alternatively, if the Court declines to hold a

---

[2] In a line of cases not followed in this U.S. District, some district courts have found that the term "examination" in § 1447(b) encompasses more than the USCIS interview of the applicant, and includes the "*process* the agency follows to gather information concerning the applicant." Danilov v. Aguirre, 370 F. Supp. 2d 41, 443-44 (E.D. Va. 2005) (emphasis in the original). Thus, these courts have found that they lacked jurisdiction under § 1447(b) until after 120 days after the lapse of the entire investigation process, including the completion of the FBI background check. Id.; see also, e.g., Yarovitskiy v. Hansen, No. 1:07 CV 1174, 2007 WL 2301172, *3 (N.D. Ohio Aug. 8, 2007) (Nugent, J.)

hearing and opts to remand the matter to the USCIS, Omran requests the Court to impose a deadline on the USCIS and the FBI to complete the processing of Omran's application. Defendants oppose Omran's petition for a hearing. Defendants request that the Court exercises its authority pursuant to § 1447(b) to remand this matter back to the USCIS with appropriate instructions.

**C.     Remand or Retain Jurisdiction**

The Court now must determine whether to exercise its jurisdiction to determine this matter or to remand it to the USCIS with or without instructions. Competing policy interests are involved. Courts have provided several reasons for declining to exercise jurisdiction in favor of remanding to the USCIS. To begin, the United States Supreme Court has stated that "judicial deference to the Executive Branch is especially appropriate in the immigration context." I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999); Musaad, No. 1:07-cv-149, Dkt. No. 12, slip op. at 11 (citing Aguirre-Aguirre). Some district courts have stated that they are "not equipped to conduct background checks of naturalization applicants." Manzoor v. Chertoff, 472 F. Supp. 2d 801, 808 (E.D. Va. 2007); see also Helmi v. Department of Homeland Security, No. 07-13826, 2007 WL 4557708, *3 (E.D. Mich. Dec. 21, 2007) (Roberts, J.) (stating that the court is not equipped to determine the application without a background check). Several judges in this Circuit likewise have found that, without a completed FBI name check, they do not "have the resources or experience to properly evaluate the multitude of individual factors that must be considered" in regard to the N-400 application. Musaad, No. 1:07-cv-149, slip op. at 10; see also Affaneh v. Hansen, No. C-3-06-267, 2007 WL 295474, *4 (S.D. Ohio Jan. 29, 2007) (Rose, J.) ("[T]his Court, like the USCIS, is not in a position to decide an application for naturalization

until the FBI completes the required criminal background investigations.").³ Naturalizing applicants without a completed FBI background check implicates national security concerns and can "undermine Congressional intent, which requires the check to be completed before any funds may be allocated to determining a naturalization petition." Musaad, No. 1:07-cv-149, slip op. at 11 (citing Dep'ts of Comm., Justice, and State, The Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. 105-119, Title I, 111 Stat. 2440, 2448 (1997)); see also 8 U.S.C. § 1446(a) (requiring background checks before an applicant can be naturalized).

Additional reasons provided by courts that have remanded to the USCIS include: (1) not wanting to discourage USCIS from conducting the examinations before FBI name checks are completed if that might expedite the naturalization process and (2) not wanting to encourage the filing of lawsuits by naturalization applicants. See e.g., Manzoor, 472 F. Supp. 2d at 808-09. In cases where the FBI background check had not been completed, the Manzoor, Affaneh, and

---

³ See also, e.g., Mahamoud v. Mueller, No. 2:06-CV-0415, 2007 WL 3232457, *8 (S.D. Ohio Nov. 1, 2007) (Holschuh, J) (similar rationale); Duri v. Hansen, No. 1:07 CV 1599, 2007 WL 3125303, *4-5 (N.D. Ohio Oct. 19, 2007) (Nugent, J.) (similar rationale); Farooq v. Hansen, 1:07 CV 0946, 2007 WL 2177890, *4 (N.D. Ohio July 27, 2007) (Wells, J.) (similar rationale).

Despite remanding the case in Mahamoud, Judge Holschuh also ordered the following:

The CIS is therefore instructed to obtain a report from the Director of the Federal Bureau of Investigation and submit it to the Court within 90 days from the date of this Order on (1) what efforts are currently being made to obtain the resources necessary to reduce or eliminate the delays in the FBI's name check program; (2) what order of priorities exists with reference to requests for name check clearance, including requests from CIS; and (3) the dates the requests from CIS for name check clearance for each of the plaintiffs in these consolidated cases were received by the FBI and the anticipated time the processing of these requests will be completed.

2007 WL 3232457, at *9.

Musaad courts favored remanding to USCIS with instructions to determine the application as expeditiously as possible or within 120 days of the completion of the background check. Musaad, No. 1:07-cv-149, slip op. at 11; Manzoor, 472 F. Supp. 2d at 809 n.11; Affaneh, 2007 WL 295474, *4; see also, Elaloul v. Hansen, No. 1:07cv215, 2007 WL 1299274, *2 n.3 (N.D. Ohio May 1, 2007) (O'Malley, J.).

Other district courts have provided more specific or demanding instructions to USCIS or the FBI upon remand. For example, in Hussein v. Gonzales, 474 F. Supp. 2d 1265 (M.D. Fla. 2007), the district court ordered the FBI "to promptly complete petitioner's background check and provide the results to the [US]CIS" and ordered the USCIS "to act on petitioner's application as soon as possible and in any event no later than" two months after the date of the decision. Id. at 1269. After the Hussein order was issued on January 1, 2007, the defendants filed a status report in March 2007 indicating that Hussein's application had been adjudicated favorably. Hussein v. Gonzales, No. 3:06-cv-497, Dkt. No. 21, slip op. (M.D. Fla. Mar. 9, 2007). In Al-Kudsi v. Gonzales, No. 3:05-cv-1584, 2006 WL 752556, *3 (D. Or. Mar. 22, 2006), following a one-day bench trial, the district court found that the nearly four year delay in determining Al-Kudsi's application was unreasonable because there had been "no explanation or justification for the delay by CIS or the F.B.I." The district court ordered the Attorney General to instruct the FBI to complete the background check within ninety days and ordered the USCIS (1) to assume that a background check would have revealed no information to prevent the applicant's naturalization if the background check was not timely completed and (2) to determine the application within thirty days of the receipt (or non-receipt) of the background check. Id. Al-Kudsi was naturalized by the USCIS more than one year later on April 23, 2007,

after Al-Kudsi filed a motion to the court alleging that the defendants had violated the court's order by continuing to delay adjudication of his application. Id., Dkt. No. 45 (D. Or. Apr. 13, 2007); id., Dkt. No. 49 (Apr. 24, 2007). In this Circuit, a judge in the Eastern District of Michigan remanded with instructions to the USCIS to issue a determination within 120 days of the date of the order. Al-Mohammed v. Citizen and Immigration Servs., No.2:07-cv-10732, 2007 WL 2004866, *4 (E.D. Mich. Jul. 9, 2007) (Duggan, J.).[4]

Finally, a few courts have refused to issue a remand and instead have scheduled hearings to determine the applications. For example, in Attisha v. Jenifer, No. 07-CV-10345, 2007 WL 2637772, *3 (E.D. Mich. Sep. 6, 2007) (Friedman, J.), the FBI background check had been delayed more than two years. The district judge explained his decision to deny a remand as follows:

> While the court understands that defendants and the FBI have an enormous and difficult case load, the extreme delay that has occurred in this case is intolerable by any standard. Remanding the case "for completion of the examination" would do nothing to ensure that defendants will, in fact, complete the examination and make a decision. Defendants offer no guarantee that they will not delay the matter for additional months or years, if not indefinitely.

Id. at *3; cf. Walji v. Gonzales, 500 F.3d 432, 438-39 (5th Cir. 2007) (stating that if district courts did not have jurisdiction 120 days after the interview, then "the applicant would have no recourse for delays and courts could do nothing to encourage or require the [US]CIS and the FBI to act in a timely fashion"). The district court in Attisha set a hearing date at the end of the following month "to determine the matter" if the FBI background check had not been completed. Id. at *4. It reserved the right to remand to the USCIS if the FBI background check was

---

[4] No additional filings have been made in the Al-Mohammed case so the status of Al-Mohammed's application is unclear.

9

completed in the interim. Id.[5] The same district judge issued a similar order in Chebli v. Chertoff, No. 07-CV-10750, 2007 WL 2571967, *4 (E.D. Mich. Sep. 4, 2007) (Friedman, J.).[6] A different judge in the Eastern District of Michigan initially set a hearing on the application in lieu of remand in Al Saidi v. Jenifer, No. 05-71832, 2005 WL 5179147, *4 (E.D. Mich. Dec. 23, 2005) (Hood, J.). Ultimately, the court remanded to the USCIS after the parties filed a stipulation agreeing to the remand on the condition that the USCIS determine the application within eighty days of the remand order. Id., Dkt. No. 16 (Mar. 13, 2006); id., Dkt. No. 19 (Mar. 21, 2006).

Upon consideration of the statutes and regulations, the precedents discussed above, and the facts of this case, the Court will set this matter for a hearing to determine Omran's naturalization application pursuant to § 1447(b). The Court recognizes the importance of obtaining background and security check information on N-400 applicants before making a determination whether the applicants are to be naturalized. The Court also recognizes the increased burdens placed on the FBI following the attacks of 9/11. Nonetheless, almost two years have passed since Omran filed his N-400 application and more than eighteen months have passed since the USCIS voluntarily examined Omran without the benefit of the FBI background check results. As was true in the Attisha case, neither Defendants nor the FBI have provided the Court with any assurances regarding when Omran's application can be completed. This Court

---

[5] A stipulated order dismissing the case without explanation was filed one month later on October 3, 2007. Attisha v. Jenifer, No. 2:07-cv-10325, Dkt. No. 15, slip op. (E.D. Mich. Oct. 3, 2007).

[6] A stipulated order dismissing the case without explanation was filed one month later on October 16, 2007. Chebil v. Chertoff, No. 2:07-cv-10750, Dkt. No. 9, slip op. (E.D. Mich. Oct. 16, 2007).

10

will not shirk its Congressionally-authorized oversight function of the naturalization application process.

In consideration of the foregoing, the Court **ORDERS** as follows: (1) a hearing for the Court to determine the matter of Omran's N-400 application is set for July 21, 2008; (2) a status conference is set for March 6, 2008 at 2:00 p.m. to discuss discovery, set a briefing schedule, and establish parameters for the hearing; and (3) the Court reserves the right to remand this matter to the USCIS if it receives notice that the USCIS has received a completed FBI name check for Omran and the USCIS has set a reasonable date certain by which to determine Omran's N-400 application.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (doc. 10) is **GRANTED** and Defendants' Cross-Motion for Summary Judgment (doc. 16) is **DENIED.**

IT IS SO ORDERED.

   ___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge